IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PLUMBERS LOCAL NO. 98 DEFINED BENEFIT PENSION FUND, on behalf itself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> COVENTRY HEALTH CARE, INC., DALE B. WOLF, SHAWN M. GUERTIN, and JOHN J. RUHLMAN, <br><br> Defendants. | C.A. No. 09-cv-02337-AW |

**MEMORANDUM OF LAW IN SUPPORT OF THE COUNTY OF YORK EMPLOYEES RETIREMENT PLAN'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL**

**PRELIMINARY STATEMENT**

Presently pending before this Court is the above-captioned securities class action litigation (the "Action") brought on behalf of all those who purchased or otherwise acquired the common stock of Coventry Health Care, Inc. ("Coventry" or the "Company") between February 9, 2007 and October 22, 2008, inclusive (the "Class Period"), against Coventry and certain of its officers and/or directors for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78u-4, *et seq.*), and Rule 10b-5 promulgated by the United States Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

The County of York Employees Retirement Plan ("York County" or "Movant") respectfully moves this Court for an Order to: (a) be appointed as Lead Plaintiff in the Action pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended

by Section 101(b) of the PSLRA; (b) approve its selection of Cohen, Placitella & Roth, P.C. and Rigrodsky & Long, P.A. as Lead Counsel for Lead Plaintiff and the Class; and (c) approve its selection of Goldman & Minton, P.C. as Liaison Counsel for Lead Plaintiff and the Class.

This Motion is made on the grounds that York County is the most adequate plaintiff, as defined by the PSLRA, because, to the best of its knowledge, it has the largest financial interest of any moving class member or plaintiff, and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* Declaration of Timothy J. MacFall, subscribed on November 2, 2009 and submitted herewith (the "MacFall Decl."), Exs. B and C. York County is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WESTLAW 1637053 at *3 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, York County is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the Class.

York County has suffered losses of $339,396 in connection with its purchases of Coventry shares during the Class Period. *See* MacFall Decl., Ex. C. Furthermore, as shown below, York County adequately satisfies the requirements of Fed. R. Civ. P. Rule 23.

## PROCEDURAL BACKGROUND

On September 3, 2009, the Action was filed in this Court. That same day, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first notice that a class action had been commenced against defendants was published on *Business Wire*, a widely-circulated, business-oriented national wire service, informing members of the proposed Class of their right to move the Court to serve as

Lead Plaintiff no later than 60 days from the notice (November 2, 2009). *See* MacFall Decl., Ex. A.

York County, a member of the Class (*see* MacFall Decl., Ex. B) has timely moved this Court within the 60 day period following publication of the September 3, 2009 notice as required for appointment as Lead Plaintiff under the provisions of the PSLRA.

## FACTUAL BACKGROUND[1]

Coventry operates as a managed healthcare company in the United States and operates health plans, insurance companies, and network rental and workers' compensation services companies. The Company markets its products and services to individuals, employer and government-funded groups, government agencies, insurance carriers, and administrators through direct sales staff and a network of independent brokers.

Coventry's Commercial Business division provides various products, including health maintenance organization (HMO), preferred provider organizations (PPO), and point of service products. This division also offers commercial management services products; and consumer-directed benefit options, including health reimbursement accounts and health savings accounts.

The Company's Individual Consumer and Government division offers health benefits to members participating in the Medicare Advantage HMO, Medicare Advantage PPO, Medicare Advantage Private-Fee-For-Service, Medicare Prescription Drug, and Medicaid programs. This division also provides fully-insured managed care services, as well as other products and services, such as pharmacy benefit management, clinical management, and fiscal intermediary services.

---

[1] These facts are drawn from the allegations in the complaint in the Action, *Plumbers Local No. 98 Defined Benefit Pension Fund v. Coventry Health Care, Inc., et al.*, C.A. No. 09-cv-02337-AW (D. Md.).

3

Coventry's Specialty Business division offers various products, including access to provider network, pharmacy benefits management, field case management, telephonic case management, independent medical exam, and bill review capabilities; and network rental services and other managed care products through a PPO network to national, regional, and local third party administrators and insurance carriers. This division also includes mental-behavioral health benefits business and dental benefits business.

Prior to the start of the Class Period, on December 6, 2006, Coventry announced that even though its Commercial Service division had been the cornerstone of the Company's business, going forward, much of the Company's growth would be derived from its Individual Consumer and Government division with the launch of its Medicare Private-Fee-For-Service ("PFFS") initiative.

It became apparent that going to the Class Period, the Company's future growth depended on the Medicare PFFS initiative. In early 2007, securities analysts began to note that the membership and growth of Coventry's Commercial business had stalled and more and more emphasis was put on the future growth of the Medicare PFFS initiative.

Throughout the Class Period, it is alleged that defendants failed to disclose that the Company engaged in a deliberate undisclosed under-pricing practice to gain new Medicare PFFS members. By engaging in this practice, defendants created the appearance that Coventry's new Medicare PFFS initiative was capable of the high growth necessary to offset the Company's shrinking Commercial business.

Furthermore, throughout the Class Period, defendants failed to disclose the true risks associated with the under-pricing strategies, including that although the Medicare PFFS products were gaining market share, those gains were having a material adverse effect on the Company's

profit margins and overall profitability. The investing public was unaware of the true negative effects of the under-pricing practice on Coventry's profit margins and overall profitability because they were hidden by improper claims assumptions that understated the Company's health care claim costs.

As a result, Coventry's under-pricing strategies and other deceptive practices did not accurately reflect the Company's true "medical loss ratio" ("MLR"). The MLR is the ratio of expenses of providing healthcare services expressed by a percentage of insurance premiums and is a closely followed financial indicator of healthcare companies such as Coventry.

Moreover, during the Class Period, as defendants concealed material adverse long term trends and issued materially false and misleading statements about the Company, Coventry insiders collectively sold more than $46 million worth of Company common stock.

On October 21, 2008, Coventry issued a press release wherein it announced its financial results for the third quarter of 2008, the period ended September 30, 2008. The Company announced operating revenues of $2.98 billion and net earnings of $85.5 million, or $0.58 per diluted share. In response to the Company's announcement, Coventry's stock price plummeted more than 51%, from a close of $28.49 per share on October 21, 2008 to a close of $13.93 per share on October 22, 2008.

## ARGUMENT

### A. York County Should be Appointed as Lead Plaintiff

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within twenty days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the Action, *Plumbers Local No. 98 Defined Benefit Pension Fund v. Coventry Health Care, Inc., et al.*, C.A. No. 09-cv-02337-AW (D. Md.), caused the first notice to be published over *Business Wire* on September 3, 2009.[2] *See* MacFall Decl., Ex. A. Within sixty-days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within ninety-days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [The] court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion or response to a notice...
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[2] Publication in *Business Wire* service satisfies the statutory requirement that notice be published in a "widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

...

15 U.S.C. § 77z-1(a)(3)(B)(iii). *See generally Greebel*, 939 F. Supp. at 64; *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WESTLAW 461036, at *2 (N.D. Ill. Aug. 6, 1997). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, York County satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, York County is entitled to the presumption that it is the most adequate lead plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### 1. York County Has the Largest Financial Interest In The Relief Sought by the Class

During the Class Period, York County purchased shares of Coventry in reliance upon the materially false and misleading statements made by defendants and were injured thereby. Additionally, York County suffered substantial losses of approximately $339,396 in connection with its transactions in Coventry and, thus, has a significant financial interest in the outcome of this case. *See* MacFall Decl., Exs. B and C. In fact, to the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Fed. R. Civ. P. 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as York County, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to

7

> presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> \* \* \*
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

Moreover, Courts around the country have recognized a Congressional preference to appoint institutional investors, such as York County, as lead plaintiff. *See Schulman v. Lumenis, Ltd.*, C.A. No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at \*2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.' ... Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs.") (citation omitted); *see also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (2005) ("Congress anticipated and intended that [institutional investors] would serve as lead plaintiffs.").

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel*, 939 F. Supp. at 63. Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999). Congress reasoned that the empowerment of institutional investors would result in the

appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . ."); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors.").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the 'most adequate plaintiff' provision.").

York County is ideally suited for the role as lead plaintiff. York County lost approximately $339,396 in Coventry common stock during the Class Period. *See* MacFall Decl., Ex. C. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, York County will be able to actively represent the Class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to

take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

### 2. York County Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a representative of the class only if the following four elements are met: (a) the class is so numerous that joinder of members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. As a result, in deciding a motion for appointment as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy requirements of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Huang v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003); *Lax*, 1997 U.S. Dist. LEXIS 11866, at *20. York County satisfies both the typicality and adequacy prongs of Rule 23(a) and, in light of its financial interest, should be appointed as Lead Plaintiff.

#### i. York County's Claims Are Typical of the Claims of All Class Members

York County has claims that are typical of those of other Class members. Under Rule 23(a)(3), typicality exists where "the claims…of the class representative parties" are "typical of

the claims...of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of other class members or when the claims are based on the same legal theory. *See Royal Ahold*, 219 F.R.D. 343 at 350. The typicality requirement of Rule 23, however, does not mean that the claims need to be identical. *See Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citations omitted); *see also Ferrari*, 2004 U.S. Dist LEXIS 13898, at *18.

York County satisfies this requirement because, just like all other class members, it: (a) purchased Coventry shares during the Class Period; (b) purchased Coventry shares in reliance of the materially false and misleading statements made by defendants; and (c) suffered damages as thereby. Thus, its claims are typical, if not identical, to those of the other members of the Class. Accordingly, York County satisfies the typicality requirement of Rule 23(a)(3).

### ii.     York County Will Adequately Represent the Class

Under Rule 23(a)(4) the representative party must also "fairly protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to whether the interests of the Movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the Movant and other members of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

The requirements under Rule 23(a)(4) are met when: (a) the absence of potential conflict between the named plaintiffs and the class members and (b) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

York County is an adequate representative of the class. As demonstrated by the injuries suffered by York County, who purchased Coventry shares at prices allegedly artificially inflated by defendants' false and misleading statements, York County's interests are clearly aligned with, and there is no evidence of any antagonism between York County and any member of, the Class. Furthermore, York County has also certified its willingness to serve as a representative of the Class. *See* MacFall Decl. at Ex. B.

York County has taken significant steps which demonstrate that it will protect the interests of the class, including retention of competent and experienced counsel to prosecute these claims. As shown below, York County's proposed selection of Lead and Liaison Counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Therefore, York County *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

### B. The Court Should Approve York County's Selection of Lead and Liaison Counsel

According to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). In that regard, York County has selected Cohen, Placitella & Roth, P.C. and Rigrodsky & Long, P.A. to serve as Lead Counsel and Goldman & Minton, P.C. to serve as Liaison Counsel. These firms have substantial experience in the prosecution of shareholder, securities and complex class action litigation. *See* MacFall Decl., Exs. D, E and F. Unless it is necessary to "protect the interests of the class," this Court should not disturb the lead plaintiff's choice of counsel. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Accordingly, York County's selection of Lead and Liaison Counsel should be approved.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (a) appoint York County as Lead Plaintiff; (b) approve York County's selection of Cohen, Placitella & Roth, P.C. and Rigrodsky & Long, P.A. as Lead Counsel for Lead Plaintiff and the Class; and (c) approve York County's selection of Goldman & Minton, P.C. as Liaison Counsel for Lead Plaintiff and the Class.

Dated: November 2, 2009

Respectfully submitted,

**GOLDMAN & MINTON, P.C.**

By: /s/ *Thomas J. Minton*
Thomas J. Minton (Fed. Bar No. 03370)
20 South Charles Street, Suite 1201
Baltimore, MD 21201
Tel.: (410) 783-7575
Fax: (410) 783-1711

*[Proposed] Liaison Counsel*

**COHEN, PLACITELLA & ROTH, P.C.**
Stewart L. Cohen
Jillian A. Smith
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Tel.: (215) 567-3500
Fax: (215) 567-6019

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Timothy J. MacFall
919 North Market Street, Suite 980
Wilmington, DE 19801
Tel.: (302) 295-5310
Fax: (302) 654-7530

*[Proposed] Lead Counsel*