IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

IN RE CONVENTRY HEALTHCARE,
INC. SECURITIES LITIGATION,
                             Plaintiff,

THIS DOCUMENT RELATES TO:
ALL ACTIONS

Action No. 08:09–CV–2337—AW

## MEMORANDUM OPINION

The Court issued an Order and Memorandum Opinion on March 30, 2011, denying-in-part and granting- in-part Defendant Coventry Health Care, Inc.'s Motion to Dismiss. Pending before the Court is Defendants' Motion for Reconsideration of that order and opinion. (Doc. No. 62). The parties have briefed this Motion, and the Court held a telephonic hearing on this motion on August 18, 2011. Also pending before the Court is the parties' request for a determination on the putative class period in this case and a determination on the scope of discovery. The Court will address each of these matters *seriatim.*

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This action, filed on September 3, 2009, arises out of alleged securities fraud committed by Defendant, Coventry Health Care, Incorporated ("Coventry") and its officers.[1] The following officers of Coventry are named as defendants in this matter: Dale Wolf ("Wolf"), President and Chief Executive Officer and Director; Shawn M. Guertin ("Guertin"), Executive Vice President, Chief Financial Officer, and Treasurer; Defendant John J. Ruhlmann ("Ruhlmann"), Senior Vice President and Corporate Controller; and Defendant Francis S.

---

[1] Several of the named defendant officers have since resigned from their positions at Coventry, but these officers served in the positions stated during the times relevant to this suit.

Soistman, Jr. ("Soistman"), Executive Vice President of Coventry's Individual Consumer and Government Business Division.

Lead Plaintiffs in this matter, New England Teamsters & Trucking Industry Pension Fund, United Food and Commercial Workers Union Local 880—Retail Food Employers Joint Pension Fund, and Southern California IBEW-NECA Pension Plan purchased common stock from Coventry during the Class Period, and allegedly suffered damages as a result of the Defendants' allegedly fraudulent behavior. *Id.* at ¶17. Plaintiffs filed this suit as a class action under Federal Rule of Civil Procedure 23(a) and (b) (3), representing a class of those who purchased common stock from Coventry during the Class Period and who were damaged as a result. The Court will briefly recount the facts that give rise to this suit.

Coventry Health Care, Inc. is a health care company that manages "health plans, insurance companies, network rental/managed care services companies, and workers' compensation services companies." Doc No. 43, at ¶ 18, 45. The company is organized into three business divisions: (1) the Commercial Business division; (2) the Individual Consumer & Government Business division; and (3) the Specialty Business division. *Id.* at ¶46. The federal government program, Medicare, gives its recipients the option of receiving their Medicare benefits through private companies, such as Coventry. The Center for Medicare and Medicare Services ("CMS") contracts with Coventry, and in exchange for the private insurance that Coventry provides to Medicare beneficiaries, CMS reimburses Coventry each month through a fixed payment for each member that receives coverage through Coventry.

As a crucial element of their business, Coventry keeps reserves for payment of claims, known as "medical liabilities"—claims that are reported but not yet paid and estimates of health care services incurred but not yet reported ("IBNR"). Coventry declares that it analyses and discloses its "Medical Loss Ratio," ("MRL") which is "the ratio of [medical] expenses of providing health care services, expressed as a percentage of insurance premiums." (Doc. No. 46-

1, at 11). Coventry indicates that "a higher percentage means that a relatively high percentage of premium payments taken in by Coventry is being paid out to health providers or other payees; a lower MLR percentage, conversely means that Coventry is retaining relatively more of the premium payments thus making greater profits." *Id.* at 11. The products that Coventry provides has two varying effects on the Company's finances—the products can affect the "amount of reserves it carries to cover past claims and . . . the amount it actually expends in payment of current year claims." *Id.*

Plaintiffs aver that Coventry was depending on the success of this product to stimulate growth for the company. Moreover, Coventry supposedly began offering PFFS plans on January 1, 2007, under the brand name "Advantra Freedom." *Id.* at ¶55. According to the Amended Complaint in this matter, the PFFS plan participants were "not limited to network providers, but [could] utilize any provider willing to accept the plan's terms and conditions." *Id.* at ¶¶53,59. The Amended Complaint further alleges that Coventry began offering the PFFS product in January 1, 2007. *Id.* at ¶¶2, 55.

Plaintiffs aver that the information obtained from numerous confidential witnesses demonstrate that Coventry engaged in practices indicative of securities fraud with respect to the PFFS program. According to Plaintiffs, the fast growth in the number of PFFS enrollees at the beginning of the program caused numerous problems for Coventry. *Id.* at ¶72. One confidential witness provided information indicating that Coventry had challenges keeping up with the growth of PFFS. *Id.* at ¶73. Such challenges included enrolling new members in plans quickly enough, servicing the new members, and timely processing provider claims. *Id*. at ¶73. Several other confidential witnesses echoed these observations. Plaintiffs allege that the difficulties that the company was experiencing in processing the claims associated with PFFS were known or recklessly disregarded. *Id.* at ¶90. As a result of the difficulties that the company was undergoing processing the claims, the Company's medical and medical liability

reserve calculations were unreliable and "materially understated throughout the Class Period." *Id.* at ¶92, 95. Consequently, Plaintiffs allege, the MLR for the PFFS program was higher than the company was disclosing to its investors. As such, the PFFS program was less profitable than investors were aware. *Id.* at 100. Purportedly, Defendants consistently touted the success of the PFFS program, despite the obvious problems the program was experiencing.

Coventry failed to disclose these problems to investors until June 2008, Plaintiffs allege. *Id.* All the while, Plaintiffs aver, Defendant knew or recklessly disregarded the problems that the PFFS program was presenting for the company. Allegedly possessing information about the severe claims processing problems that the company was experiencing, Plaintiffs state that Coventry misled investors about the success of the PFFS program during the class period with its positive public statements about the PFFS program. Plaintiffs presented the Court with approximately sixty allegedly false and misleading statements that Coventry made in forms filed with the SEC, press releases, conference calls, and other public statements during the class period. These purportedly misleading statements are the basis for the suit at bar.

In the Amended Complaint, Plaintiffs alleged three counts against Defendants, asserting the following violations: Violation of 10 (b) of the Exchange Act Against Rule 10b-5 (Count 1); violation of Section 10 (b) of the Exchange Act and Rule 10b-5(a) and (c) (Count II); violation of Section 20(a) of the Exchange Act (Count III). In its March 30, 2011 Memorandum Opinion, the Court granted Defendants' Motion to Dismiss Count I as to all statements except for those made on April 25, 2008 and May 21, 2008.[2] As to Count II, Defendants' Motion to Dismiss was granted as to Defendants Wolf, Rulhmann, and Guertin but denied as to Defendant Soistman and Coventry Health Care Inc. The Court declined to dismiss Count III of the Amended Complaint.

---

[2] The Court acknowledges that one segment of its March 30, 2011 Memorandum Opinion inadvertently stated that Plaintiffs had adequately alleged a statement made on May 12, 2008 to be materially misleading. (Doc. No. 58, at 22). To clarify, the only statements that Plaintiffs alleged were materially misleading were those made on April 25, 2008 and May 21, 2008.

Defendants have asked the Court to reconsider its decision and grant their motion to dismiss in full.

## I. STANDARD OF REVIEW

In the Fourth Circuit, a Court can amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002). Reconsideration is, however, an extraordinary remedy. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998).

## II. ANALYSIS

Defendants move for reconsideration on the grounds that the Court committed a clear error of law in its Memorandum Opinion. Defendants argue that the Court's decision is contrary to the controlling Fourth Circuit precedent articulated in *Teachers' Retirement System of Louisiana v. Hunter,* (4th Cir. 2007). In their Motion for Reconsideration, Defendants argue: (1) the Court failed to apply the correct legal standard in concluding that Plaintiffs adequately alleged that problems were discussed in April 2008; and (2) the Court improperly credited allegations relating to the claims processing backlog made by confidential witnesses. (Doc. No. 62). The Court will address both contentions in turn.

Defendants' first contention arises out of the fact that the Court found that Plaintiffs had adequately alleged two statements to be materially misleading, out of the sixty that Plaintiffs had alleged. The two statements were made on April 25, 2008 and May 21, 2008. Allegations from CW1 provided information sufficient for the Court to reach the conclusion that Plaintiffs had adequately pleaded the April 25 and May 21 statements were materially misleading. Those allegations as stated in the Complaint are as follows: "In fact, CW1 reported that the problems with PFFS were discussed among Coventry's executive management during its annual executive

meeting, held in April 2008, in which CW1 participated."Am. Compl. ¶ 12. Looking at the Complaint in its entirety, the Court inferred that the problems discussed were problems with the claims processing overload that the defendants were experiencing and the effect that the processing delays were having on the company's reserve levels. Defendants contend that the Court erred in assuming that the problems discussed at Coventry's annual executive meeting related to their claims process issues, asserting that ("[t]he heightened pleading standards of the PSLRA do not allow the Court to 'assume' what the 'problems' were.") (Doc. No. 62-1, at 8). Applying the reasoning asserted in *In re Peoplesoft, Inc.*, No. C 99-00472 WHA, 2000 WL 1737936, at *3 ( N.D. Cal. May 25, 2000), the Court found Plaintiffs had adequately alleged that the problems CW1 heard being discussed at the annual executive meeting, supported the inference that the problems discussed were the pervasive problems processing PFFS claims. (*See* Doc. No. 62-1, at 7)(citing *In re Peoplesoft Inc.* for the proposition that "the fact that a particular matter constitutes a significant source of income to a company can establish a strong inference that the company and its relevant officers knew of easily discoverable additional facts that directly affected that source of income.").

At issue is whether the Court's reasoning was inconsistent with controlling Fourth Circuit precedent. Defendants attempt to use *Teachers' Retirement* to support their assertion that courts must assume that the plaintiff has alleged all of the facts upon which he bases his allegation of a misrepresentation or omission to meet the PSLRA pleading standard. (*Id.* at 6). *Teachers' Retirement* warns against the formulaic reading of PSLRA, stating, "to require the pleading of *all* facts which support a plaintiff's belief on the sanction of a dismissal … could theoretically lead to some harsh results in the management of discovery and PSLRA litigation in general." (*Id.* at 174). Additionally, *Teachers' Retirement* advises that courts need "only determine in the circumstances before [it] whether plaintiff's complaint alleges sufficient facts upon which a reasonable belief can be formed." *Id.*

The Amended Complaint alleges that CW1 heard problems regarding the PFFS program discussed at the annual executive meeting at which CW1 allegedly attended along with Coventry's executive management. This factual allegation, in conjunction with the numerous other factual allegations regarding the PFFS claims processing issues, supports the inference that the problems discussed were the pervasive problems processing PFFS claims. Accordingly, in its Opinion, the Court found there were sufficient facts upon which a reasonable belief could be formed that the Defendants knew about the PFFS claims processing problems in April 2008, rendering the statements made on April 25, 2008 and May 21, 2008 materially misleading statements. *Id.* Consequently, the Court will not disturb its prior ruling, as it does not appear that it has committed a clear error of law such that a motion for reconsideration should be granted based on Defendants' first contention.

As an additional basis for reconsideration of the Court's March 30, 2011 Opinion, the Defendants contend that the Court improperly credited the confidential witnesses' allegations in finding that the plaintiffs had adequately alleged that the defendants were aware of the PFFS claims processing problems. (Doc. No. 62). Defendants assert that "the flaws with the CW allegations were not limited to their lack of information about what the Defendants knew but also affected their ability to provide facts that adequately showed the nature and severity of the 'problems' that allegedly existed on a companywide basis." Defendants cite *Teachers' Retirement* for the proposition that the sources of the facts need to be assessed for reliability. However, the Court does not agree that *Teachers' Retirement* requires such an individualized assessment of the reliability of the confidential witnesses, as *Teachers' Retirement* allows the Court to assess the "complaint as a whole." 477 F.3d at 174. Moreover, *Teachers'* informed Courts that when determining whether a plaintiff had met the PSLRA pleading requirements, the Court should "consider the number and level of detail of the facts; the plausibility and coherence of the facts; whether sources of the facts are disclosed and the apparent reliability of those

sources; and any other criteria that inform how well the facts support the plaintiff's allegation that defendant's statements or omissions were misleading." *Id.*

In its Memorandum Opinion, the Court determined that the allegations of the PFFS claims processing problems made by CW2 through CW9 were insufficient to impute scienter to Defendants regarding company-wide knowledge of PFFS claims processing problems. While the individual testimony of each confidential witness was insufficient to impute scienter onto the company as whole, their individual knowledge about the PFFS claims processing backlogs, combined with the disclosure of their positions at the company, gave rise to the inference that the Defendants knew about the PFFS claims processing problems when they were alleging discussing problems with the PFFS program, as CW1 alleged.

As the Court noted in *In Re Peoplesoft, Inc,* "circumstantial evidence (plus any other direct evidence) must still give rise to a 'strong inference,' but once it does so, no more is required to satisfy the PSLRA's scienter threshold." 2000 WL 1737936, at *3. Sufficient factual allegations, even if circumstantial, were made in Plaintiffs' Amended Complaint to give rise to a strong inference of scienter. Accordingly, the Court believes that its ruling was based on sound legal grounds and does not find a clear error of law based on Defendants' second contention. Accordingly, the Court will **DENY** Defendants' Motion for Reconsideration.

### III. Determination on Putative Class Period

In their status report to the Court, the parties have requested that the Court determine when the putative class period ends in this case, as there is disagreement between the parties on this issue. In the Court's Opinion on Defendants' Motion to Dismiss, the Court ruled that Plaintiffs had adequately alleged that only two statements which the defendant made were materially misleading—those statements which were made on April 25, 2008 and May 21, 2008. The Court ruled that Plaintiffs had not adequately alleged that statements made on June 18, 2008

were materially misleading. Moreover, the Court held that Defendants acknowledged problems with the PFFS program in the statements that they made on June 18, 2008.

Defendants maintain that they believe that the Court's ruling on the Motion to Dismiss means that the putative class period ends on June 18, 2008. However, Plaintiffs contend that the class period should end no earlier than October 21, 2008, as they believe that on that date, Plaintiff's disclosed the truth about their misleading statements to the market regarding the PFFS program. Defendants assert that a determination on the ending date of the putative class period would be helpful so that they can determine discovery deadlines. Additionally, Defendants believe that "fact discovery other than class certification discovery should be limited to discovery relating to CW1 until there is a ruling on class certification." (Doc. No. 67, at 4). However, Plaintiffs believe that "fact discovery should commence immediately and continue for 6 to 9 months and its duration and scope will not materially differ based on the ending date of the class period." *Id.*

Regarding the end of the putative class period in this case, in its Opinion on the Motion to Dismiss as acknowledged above, the Court noted that the Amended Complaint indicated that Defendants began to acknowledge problems with the PFFS claims processing problems in the statement made on June 18, 2008. (Doc. No. 58, at 24). As the Court did not find that Plaintiffs had adequately alleged that any statements made after this date were materially misleading, it would be most appropriate to limit the Class Period to this date (June 18, 2008).

Moving onto the scope of discovery, the Court believes it will be most effective to allow uninhibited fact discovery at this point, without limiting discovery to that related to CW1. It would be a better use of the parties' resources to conduct discovery now, without a limitation upon its scope. Therefore, the Court will allow uninhibited fact discovery upon the issuance of the corresponding Order to this Opinion.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Reconsideration is **DENIED**. Additionally, the putative class period in this case ends on June 18, 2008. Finally, the Court will allow uninhibited fact discovery upon the issuance of the corresponding Order in this matter. An order consistent with this Opinion will follow.


<u>August 30, 2011</u>                                     _____/s/_____
Date                                                    Alexander Williams, Jr.
                                                        United States District Judge