**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| IN RE COVENTRY HEALTHCARE, INC.: | * | |
| ERISA LITIGATION | * | |
| | * | |
| v. | * | **Civil No. AW 09-2661** |
| | * | |
| THIS DOCUMENT RELATES TO: | * | |
| ALL ACTIONS | * | |
| | * | |

**MEMORANDUM OPINION**

Presently pending is Plaintiffs' motion to compel Defendants' compliance with discovery

requests.  ECF No. 50-2.  In accordance with Local Rule 104.7, counsel for all parties held

multiple telephonic conferences concerning the production of documents for the class period

alleged in this action (February 9, 2007 to October 22, 2008), but could not agree on the scope of

the discovery time period.  *Id.*

**I.      Background**

Plaintiffs, Loretta Boyd, Christopher Sawney, Karen A. Milner, Jack J. Nelson and Karen

Billig filed this class action against Defendants, Coventry Health Care, Inc. (Coventry) and

certain fiduciaries of the Coventry Retirement Savings Plan (the Plan), alleging violations of the

Employee Retirement Income Security Act of 1974 (ERISA).[1]  Plaintiffs set forth four counts in

their Amended Complaint.  ECF No. 17.  Count I asserts a claim for failing to prudently and

loyally manage the Plan and assets of the Plan; Count II asserts a claim for failing to monitor

---

[1] ERISA governs employee benefit plans, including retirement plans. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 417 (4th Cir. 2007).  "Under ERISA, plan fiduciaries are assigned a number of detailed duties and responsibilities, which include the proper management, administration and investment of plan assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest." *Id.*  Fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B) (2000).

fiduciaries; Count III asserts a claim for failing to avoid conflicts of interest; and Count IV

asserts a claim for co-fiduciary liability.  On August 12, 2010, Defendants' Motion to Dismiss

the Amended Complaint was denied as to Counts I, III, and IV, and granted as to Count II.  ECF

No. 29.

In the present motion, Plaintiffs seek information relating to Coventry's Medicare

Advantage Private Fee for Service (PFFS) program during the relevant class period of February

9, 2007 to October 22, 2008.  Defendants claim that the court should limit the discovery

timeframe to January 1, 2008 through June 30, 2008, arguing that the requested timeframe is

overbroad in light of rulings in the companion Securities Litigation and would impose an undue

burden on Defendants.  ECF No. 50-4 at 1.

## II.      Standard of Review

Typically, "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense."  FED.R.CIV.P. 26(b)(1).  "The relevance standard

addresses 'concerns about the overbreadth and expense of discovery,' and, thus, 'restricts the

scope of discovery to unprivileged facts relevant to the claim or defense of any party . . . .'"

*EEOC v. Freeman*, 2012 U.S. Dist. LEXIS 114408, *2-3 (D. Md. Aug. 14, 2012) (quoting

*Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 171 (D. Md. 2001)).  However,

where good cause is shown, "discovery of any matter relevant to the subject matter involved in

the action" may be ordered.  *Id.*  "Relevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*;

*Maxtena, Inc. v. Marks*, 2012 U.S. Dist. LEXIS 174994, *9 (D. Md. Dec. 11, 2012).

III.    **Discussion**

A.  **The Scope of the Discoverable Time Period**

Plaintiffs argue that the discovery time period should run from February 9, 2007 to

October 22, 2008.[2]  ECF No. 50-6 at 6.  Defendants seek to limit the discovery time period to

January 1, 2008 to June 30, 2008.

Defendants rely on this court's decision in the companion "Securities Litigation," *In re*

*Coventry Healthcare Sec. Litig.*, No. 8:09-cv-2337, 2011 U.S. Dist. LEXIS 97246 (D. Md. Aug.

30, 2011).  In that case, Plaintiffs allege securities fraud, claiming that Coventry misled investors

about the success of the PFFS program.   In the Securities Litigation, the court found that

Plaintiffs had adequately alleged that only two of Coventry's statements—issued on April 25,

2008 and May 21, 2008—were materially misleading, and accordingly narrowed the Securities

Litigation class period to April 25, 2008 to June 18, 2008.  The court held that Plaintiffs failed to

show how any of the Defendants' statements made after June 18, 2008 could be materially

misleading and thus actionable under securities laws.[3]

Defendants point out that the court has noted in this case that the ERISA claims and the

Securities Litigation claims are based on the same set of operative facts.  In the words of the

court: "From the Amended Complaint filed in the instant case, it appears that the Plaintiffs rely

on the same public statements made by Coventry that the Court assessed in 09-2337-AW [the

Securities Litigation] as the basis for the ERISA claim."  ECF No. 29 at 3.  Thus, according to

Defendants, "[g]iven the factual overlap between the Securities Litigation and this case—which

---

[2] Plaintiffs originally asked for documents from January 1, 2007 to December 31, 2008 "to capture the relevant pre and post-mortem documents relating to the claims raised during the Class Period," but have since narrowed the scope of their requests.  ECF No. 50-6 at 5-6.

[3] In the case of a securities fraud action, "a proposed class should close when the facts which underlie the gravamen of the plaintiff's complaint [no longer] represent a reasonable basis on which an individual purchaser or the market would rely." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 291 (S.D.N.Y. 2008) (citation and quotation marks omitted).

the Court has acknowledged—the rulings in the Securities Litigation regarding the scope of the class period are highly persuasive, if not controlling here."  ECF No. 50-4 at 4.

In *Lively v. Dynegy, Inc.*, 2007 U.S. Dist. LEXIS 14794, *19-21 (S.D. Ill. Mar. 2, 2007), the defendants made a similar argument, asserting that the proposed class period in an ERISA action "must run only to the date Defendants made curative disclosures with respect to the value of [the] stock."  *Id.*  The Court disagreed, stating that:

> While it is the case that in class actions under the federal securities laws alleging misrepresentation as to the value of shares the class period generally is determined by the time when curative information is publicly announced or otherwise effectively disseminated, *see, e.g., In re Sunrise Sec. Litig.*, MDL No. 655, 1987 WL 19343, at **1-2 (E.D. Pa. July 7, 1987), this case is brought under ERISA . . . not the securities laws.  *See In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 914-15 (E.D. Mich. 2004) (rejecting defendants' attempts to import rules derived from securities law into ERISA fiduciary litigation); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1181-82 (D. Minn. 2004) (same); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 565-66 (S.D. Tex. 2003) (the duties imposed by federal securities laws do not, absent express congressional intent, prevent the imposition of additional duties under ERISA); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 767 (S.D.N.Y. 2003) (same).
>
> ERISA imposes on plan fiduciaries a duty to use prudence "in investigating, evaluating and making [a plan] investment," as well as a "duty to monitor performance [of the investment] with reasonable diligence and to withdraw the investment if it bec[omes] clear or should have become clear that the investment was no longer proper for the Plan."  *Boeckman*, 461 F. Supp. 2d at 814.  Accordingly, the proper termination date of the proposed class period is the date when [the] stock ceased to be, as Plaintiffs allege, an imprudent investment for the Plan.

Thus, unlike the Securities Litigation, in which the focus is primarily on misleading statements, the focus in this ERISA action is also on Defendants' conduct, as fiduciaries, in offering Coventry Stock as an investment option when they allegedly knew it was overvalued.[4] The class period for an ERISA prudence claim covers the period of time during which the

---

[4] Partly because of this difference, only three Defendants remain in the misrepresentation claim—Shawn M. Guertin (an officer at Coventry), Dale B. Wolf (a director at Coventry), and Coventry (the corporate entity)—whereas all original Defendants remain in all other aspects of Count I.  ECF No. 47.

investment is imprudent.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 603 (3d

Cir. 2009); *see also Lively v. Dynegy, Inc.*, 2007 WL 685861 at *6 (S.D. Ill. Mar. 2, 2007)

("Accordingly, the proper termination date of the proposed class period is the date when Dynegy

stock ceased to be, as Plaintiffs allege, an imprudent investment for the Plan.").  As a result, the

ERISA class period, and the scope of discovery that relates to that class period, may be different

from that of the securities class period.  *See e.g., Harris v. Koenig*, 722 F. Supp. 2d 44, 52-53

(D.D.C. 2010) ("[A]lthough the two sets of claims are obviously similar, they differ in

significant ways. The ERISA action alleges a longer Class Period than that alleged by the Illinois

plaintiffs in their securities case: the ERISA action's Class Period dates back to January 1, 1990,

while the Illinois Litigation's Class Period dated back only to November 3, 1994.").

Here, Plaintiffs allege that Defendants breached their ERISA fiduciary duties as early as

February 9, 2007, by imprudently investing Plan funds in Coventry stock.  Plaintiffs contend that

Defendants knew or should have known that Coventry's PFFS program (which was launched on

January 1, 2007) would fail because, *inter alia*, it lacked proper internal controls to measure,

monitor and process the provider claims.  ECF No. 17 at 79-80.  Plaintiffs allege that the Plan

continued to suffer losses at least until October 22, 2008, and that Defendants could have

prevented or minimized these losses if they had acted prudently.  Accordingly, the court will not

limit discovery to the Securities Litigation class period.

### B.  The Burden of Discovery on Defendants

Defendants also assert that the burden of producing the electronically stored information

(ESI) within the class period outweighs any potential benefit to the Plaintiffs.  ECF No. 50-4 at

7-8.  Rule 26(b)(2)(C)(iii) requires a court to limit discovery if "the burden or expense of the

proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." While the court may restrict the scope of a production request, it "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." FED. R. CIV. P. 26 advisory committee's note. Here, Plaintiffs are entitled to discover information potentially relevant to their prudence claim during the identified class period. Rules 26(b)(2) and (c) provide abundant resources to tailor discovery requests to avoid unfair burden or expense and yet assure fair disclosure of important information.[5] "[I]t is clear that, ordinarily, the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Thompson v. U.S. Dept. of Hous. & Urban Dev.*, 219 F.R.D. 93, 97 (D. Md. 2003). The party seeking to lessen the burden of responding to electronic records discovery "bears the burden of particularly demonstrating that burden and of providing suggested alternatives that reasonably accommodate the requesting party's legitimate discovery needs." *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 245 (D. Md. 2005).

Defendants claim that they applied Plaintiffs' proposed search terms to the ESI of

---

[5] As stated in *Thompson v. U.S. Dept. of Hous. & Urban Dev.*, 219 F.R.D. 93, 98-99 (D. Md. 2003):

> The options available are limited only by the court's own imagination and the quality and quantity of the factual information provided by the parties to be used by the court in evaluating the Rule 26(b)(2) factors. The court can, for example, shift the cost, in whole or part, of burdensome and expensive Rule 34 discovery to the requesting party; it can limit the number of hours required by the producing party to search for electronic records; or it can restrict the sources that must be checked. It can delay production of electronic records in response to a Rule 34 request until after the deposition of information and technology personnel of the producing party, who can testify in detail as to the systems in place, as well as to the storage and retention of electronic records, enabling more focused and less costly discovery. A court also can require the parties to identify experts to assist in structuring a search for existing and deleted electronic data and retain such an expert on behalf of the court. But it can do none of these things in a factual vacuum, and *ipse dixit* assertions by counsel that requested discovery of electronic records is overbroad, burdensome or prohibitively expensive provide no help at all to the court.

selected Coventry custodians for the period January 1, 2007 to December 31, 2008, and "hit"

approximately 200,000 documents.  ECF No. 50-5 at 3 (Declaration of Simon J. Torres in

Support of Defendants' Opposition to Plaintiffs' Motion to Compel).  Defendants argue that it

will cost approximately $388,000 to process, host, and review the data for responsiveness and

privilege.  *Id.* at 3-4.  Defendants, however, have not suggested any alternative measures that

could reasonably accommodate Plaintiffs' discovery needs other than negotiating more refined

search terms.

        Plaintiffs reply that they have been collaborating with Defendants to develop appropriate

searches for ESI by limiting the searches to certain designated custodians.[6]  Plaintiffs also note

that they agreed to shorten the discovery period to February 9, 2007 through October 22, 2008 to

help alleviate Defendants' burden.

        In *Adair v. EQT Prod. Co.*, 2012 WL 1965880 (W.D. Va. May 31, 2012), the issue

before the court was whether production of accessible documents should not be ordered

because of the high cost of reviewing those documents for privileged or responsive

information.  *Id.* at *4.  The court stated: "As [then] Magistrate Judge Grimm noted in *Hopson*

[*v. Mayor & City Council of Baltimore*, 232 F.R.D. 228 (D. Md. 2005)], the more practical

approach is to avoid the necessity of an expensive and time-consuming privilege review by

entry of a court order with a clawback provision that protects against a claim of waiver by

production of a privileged document."[7]  *Id.*  The *Adair* court entered an order that specifically

stated that any production made without a privilege review "shall not be deemed to have

---

[6] Time period issues aside, the parties have already agreed on a protocol that will govern discovery of ESI in this case.  *See* ECF No. 49.

[7] In *Hopson*, the court contemplated an order "that include[d] language that compliance with the approved [discovery] procedures will not result in the waiver of any privilege or work product claim for any inadvertently produced privileged material."  *Id.* at 246.  The court reasoned that "the issuance of such an order is essential to protecting against subject matter waiver of attorney-client privileged or work product protected information."  *Id.*

waived any privilege . . . ." *Id.* at 5. The court emphasized that the defendant had the capability to "filter the emails by custodian, by date and by combination of one or more search terms or keyword searches." *Id.* The court noted that "if the court orders [defendant] to turn over the emails retrieved by one or more of the filtered or keyword searches suggested by the parties, plaintiff's counsel would then bear the burden of review to inform the court whether the ESI produced was over-inclusive or under-inclusive." *Id.* The court recognized that "[i]f necessary, the court, with input from the parties, could order additional production based on further refined or broadened searches." *Id.*

In this case, Defendants' claimed cost to review the requested ESI for responsiveness and privilege will be somewhat reduced now that Plaintiffs have narrowed the discovery time period by approximately three months. More importantly, however, a clawback order can protect Defendants against a claim of waiver, such that Defendants need no longer bear the cost of reviewing the ESI for responsiveness and privilege.[8] To further reduce any undue burden, Plaintiffs may need to refine their proposed search terms to narrow the pool of potentially relevant documents.[9] In light of these options, Defendants have not shown that producing the requested ESI will be unduly burdensome.

---

[8] A similar clawback order regarding confidentiality is already in place in this case. *See* ECF No. 44. On November 17, 2011, the court granted a stipulation regarding confidentiality of discovery material. Subsection (k) of section 1 of the stipulation states that:

> The inadvertent or unintentional disclosure by any party of Confidential Material, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter. This clawback provision shall be governed by Fed. R. Evid. 502(d).

[9] Defendants "have numerous concerns about Plaintiffs' proposed terms and will attempt to confer with Plaintiffs to try to reach an agreement on appropriate search terms to be applied to ESI." ECF 50-4 at 9 n.5.

**IV.    Conclusion**

   Plaintiffs' motion to compel will be granted as to the time period between February 9, 2007 and October 22, 2008.  If Defendants choose to seek a clawback order, they may confer with Plaintiffs and submit one for court approval.


Date:  March 21, 2013          /s/

                JILLYN K. SCHULZE
              United States Magistrate Judge